UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ABDUL HAKEEN JAHMAL NASEER
SHABAZZ, a/k/a OWEN DELANO
DENSON,

    Plaintiff,

v.

Case No: 2:20-cv-358-JLB-NPM

SHELLY BAKER, MARK INCH,
Secretary, Florida Department of
Corrections, FNU GEHDI, and J.
CONNER,

    Defendants.

## **ORDER**

Plaintiff Abdul Hakeen Jahmal Naseer Shabazz ("Mr. Shabazz"), an inmate at the Desoto Correctional Institution Annex ("Desoto CI") proceeding pro se, has sued Defendants, various employees of Desoto CI and the Florida Department of Corrections ("FDOC"), for civil rights violations under 42 U.S.C. § 1983. Specifically, Mr. Shabazz alleges that the Defendants violated his First, Eighth, and Fourteenth Amendment rights as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, and Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb, when they ordered Mr. Shabazz, a Muslim, to trim his beard in contravention of the grooming tenets of Islam. Pending before the Court is Defendants' Motion to Dismiss Mr. Shabazz's Complaint. (Doc. 20.) After reviewing the parties' filings, as well as the procedural

history of Mr. Shabazz's other case in this Court, the Court finds that Defendants' Motion to Dismiss is **GRANTED**, and Mr. Shabazz's Complaint (Doc. 1) is **DISMISSED** without prejudice.  In the event that Mr. Shabazz renews his Complaint, such a Complaint shall be consolidated with Mr. Shabazz's other case in this district, 2:17-cv-648-JES-NPM.

## BACKGROUND

Mr. Shabazz, a devout Muslim, is an inmate at Desoto CI in Arcadia, Florida. (Doc. 1 at 2, 4.)  Mr. Shabazz alleges that on April 27, 2020, one of the named defendant corrections officers observed Mr. Shabazz standing outside of the dining hall and told Mr. Shabazz that he needed to shave because his beard was "out of compliance" with DCI's grooming policy.  (Id. at 4.)  Mr. Shabazz refused to do so because this grooming mandate prevented him from growing a fist length beard as his religious beliefs dictated.  (Id.)

Furthermore, Mr. Shabazz has an ongoing case before another Judge in this district.  In that case, he was granted a Temporary Restraining Order ("TRO") in 2017, which directed that "while the Restraining Order remains in effect, Plaintiff shall not be required to shave Plaintiff's beard" and "Defendants shall not impose discipline for violation of the Department's grooming policy while the Restraining Order remains in effect."  Order, Shabazz v. Sec'y Dep't of Corr., No. 2:17-cv-648-JES-NPM (M.D. Fla. Nov. 17, 2017), ECF 22.  Mr. Shabazz told the officer that the TRO remained in effect, thereby preventing anyone from forcing Mr. Shabazz to shave, but the officer stated that the TRO had expired.  (Doc. 1 at 4.)

Despite Mr. Shabazz's protestations, Defendants "forced [Mr. Shabazz] to shave or face disciplinary action." (Id. at 4.) That same day, Mr. Shabazz filed an emergency grievance with the Warden's Office "plac[ing] Warden Baker on notice regarding the" harassment he faced from the two named Defendant corrections officers and describing himself as "an open target to either shave or be locked up for expressing his religious beliefs which requires him to grow a fist length beard." (Id. at 7.)

The second incident giving rise to Mr. Shabazz's Complaint occurred on May 13, 2020 when one of the same corrections officers followed Mr. Shabazz to his dormitory and again forced him to shave. (Id. at 5.) On May 14, Mr. Shabazz filed this Complaint under 42 U.S.C. section 1983, alleging that Defendants had violated his rights under RLUIPA and RFRA. (Doc. 1.) Mr. Shabazz also seeks declaratory judgment that Defendants' conduct violated the First, Fourteenth, and Eighth Amendments of the Constitution, punitive damages, and an injunction allowing him to grow a fist-length beard and trim his mustache in accordance with his religious beliefs." (Id. at 5.)

Defendants move to dismiss, arguing that Mr. Shabazz fails to state a claim. (Doc. 20.) The RLUIPA claim, Defendants contend, is "unquestionably duplicative" of the case filed in 2017, No. 2:17-cv-648-JES-NPM. (Id. at 12.) Furthermore, Defendants argue that Mr. Shabazz's Complaint does not comply with the Federal Rules of Civil Procedure, and that he has failed to exhaust his administrative remedies under the PLRA. (Id. at 9, 15.) Defendants therefore request that the

Court dismiss this case with prejudice or consolidate it with the case that Mr. Shabazz filed in 2017.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted.  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This standard of plausibility is met when the plaintiff pleads enough factual content "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

When reviewing a motion to dismiss, courts must accept all factual allegations contained in the complaint as true and view the facts in the light most favorable to the plaintiff. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007).  Legal conclusions, however, "are not entitled to the assumption of truth." Ashcroft, 556 U.S. at 664.  In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

Defendants move to dismiss Mr. Shabazz's Complaint under a number of theories: (1) the Complaint fails to comply with the pleading requirements set out by the Federal Rules of Civil Procedure; (2) Mr. Shabazz failed to state a claim under 42 U.S.C. § 1983, RFRA, and the RLUIPA; (3) qualified immunity bars Mr.

4

Shabazz's claims; and (4) Mr. Shabazz failed to exhaust his administrative remedies under the PLRA. (Doc. 20 at 9–19.) The Court will assess the most pertinent of these four challenges below.

1. **Mr. Shabazz's Complaint complies with the Federal Rules of Civil Procedure.**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the claim is and the grounds upon which it rests." See also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

While all litigants are required to comply with these procedural rules, pleadings from pro se litigants are held to less stringent standards and are to be liberally construed. McNeil v. United States, 508 U.S. 106, 113 (1993). "Pro se prisoner complaints must be read in a liberal fashion and should not be dismissed unless it appears beyond all doubt that the prisoner could prove no set of facts under which he would be entitled to relief." Taylor v. Gibson, 529 F.2d 709, 714 (5th Cir. 1976). Both matters of fact and law are to be read within this more permissive framework. Id. In fact, even where the pro se prisoner's complaint is deficient in some way, the district court has "a duty to ascertain whether there is any factual basis for the asserted claim. In those cases where a defect in the complaint is curable, the court should allow amendment." Watson v. Ault, 525 F.2d 886, 892 (5th Cir. 1976).

Thus, while Defendants argue that Mr. Shabazz's Complaint fails to contain "a short and plain statement of the claim showing that the pleader is entitled to

5

relief" in violation of the Federal Rules of Civil Procedure, the Court disagrees. (Doc. 20 at 9.)  Reading Mr. Shabazz's Complaint "in a liberal fashion," as the caselaw instructs, Mr. Shabazz's pleading is satisfactory.  He explains the grounds for the court's jurisdiction, states a short and plain statement of his section 1983 claim, provides an account of the injuries that resulted from Defendants' conduct, and finally, makes a demand for relief.  (See Doc. 1 at 3–5.)  Because Mr. Shabazz's Complaint is in conformity with the Federal Rules of Civil Procedure, it is not due to be dismissed for a violation of the pleading standards.

### 2. Mr. Shabazz failed to exhaust his administrative remedies under the PLRA.

The PLRA states that "No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Therefore, "when a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a section 1983 lawsuit."  Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005) (quotation omitted).  The Eleventh Circuit has advised that the question of exhaustion under the PLRA [is] a "threshold matter" that the courts must address before considering the merits of the case.  Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004).  Further, given that exhaustion is mandated by the PLRA, the Court has no discretion to waive the exhaustion requirement.  Alexander v. Hawk, 159 F.3d 1321, 1325–26 (11th Cir. 1998).

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones v. Bock, 549 U.S. 199, 218 (2007) (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code r. 33-103.001 to 33-103.018. First, the inmate must file an informal grievance by submitting it to the designated staff member at his facility. Id. r. 33-103.005. Inmates can file complaints regarding, "The substance, interpretation, and application of rules and procedures of the department that affect them personally" and "Incidents occurring with the institution that affect them personally," among other things. Id. r. 33-103.001(a), (d). Inmates are advised to use the informal grievance process prior to initiating a formal grievance, except in certain emergency circumstances. Id. r. 33-103.005(1). Informal grievances must be received within twenty days from the date on which the grieved incident occurred unless an extension is granted. Id. r. 33-103.011(1)(a).

If the issue is not resolved by an informal grievance, the inmate may submit a formal grievance by filling out a particular form, attaching the informal grievance to that form, and submitting both grievances to the appropriate institutional staff member. Id. r. 33-103.006(2). Formal grievances generally must be received no later than fifteen days from the date of the response to the informal grievance. Id. r. 33-103.011(1)(b). Prison officials must investigate, evaluate, and respond to the inmate's formal grievance within twenty calendar days of the receipt of the

grievance. Id. r. 33-103.011(3)(b). If both the informal and formal grievances are unsuccessful, the inmate may file an appeal to the Office of the FDOC Secretary. Id. r. 33-103.107. In such an appeal, the inmate must attach copies of his grievances and the responses he received from prison officials. Id. r. 33-103.107(2). Grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. Id. r. 33-103.011(1)(c).

    Here, Mr. Shabazz has not properly exhausted his administrative remedies. First, Mr. Shabazz improperly filed a formal, emergency grievance in violation of the Florida Administrative Code. Mr. Shabazz states that he filed an "emergency grievance" with the Warden's Office in which he "placed Warden Baker on notice regarding the conspiracy involving Lt. J. Conner, Capt. Gedhi, and Assistant Warden of Programs Lori Norwood to undermin[e]" Mr. Shabazz's ongoing litigation in front of this Court by "harassing [Mr. Shabazz] stating that he had no T.R.O. any more so he is now an open target to either shave or be locked up for expressing his religious beliefs." (Doc. 1 at 7.)

    Accepting the facts pleaded in Mr. Shabazz's complaint as true, the misconduct alleged—a conspiracy between prison staff and officials to undermine Mr. Shabazz's ongoing lawsuit—does not rise to the level of an emergency permitting Mr. Shabazz to skip the first step of the grievance process, filing an informal grievance. See Fla. Admin. Code r. 33-103.005(1) (explaining that inmates may skip the step of filing an informal grievance for grievances of an emergency

8

nature, of reprisal, alleging violations of the Americans with Disabilities Act, related to medical issues, involving gain time, challenging placement in close management, regarding the return of incoming mail, regarding disciplinary action, or regarding allegations of sexual abuse). None of the issues raised in Mr. Shabazz's Complaint pertain to these particularly severe forms of grievances. (See Doc. 1 at 4–5.) Therefore, it was inappropriate for Mr. Shabazz to file a formal grievance without first filing an informal grievance. See Fla. Admin. Code r. 33-103.005(1). Since nothing in Mr. Shabazz's Complaint indicates that he did file an informal grievance, his decision to skip this step was not in compliance with the Florida Administrative Code.

Even if Mr. Shabazz's claim was of such a nature as to trigger an automatic formal grievance under the Florida Administrative Code, his Complaint was still filed prematurely and before the Warden had a chance to respond. Once again, the grieved incident in question occurred on April 27, 2020, and on that same day, Mr. Shabazz filed an emergency grievance with the Warden's Office. (Doc. 1 at 5, 7.) According to Mr. Shabazz, the Warden's office never responded to Mr. Shabazz's grievance. (Id.) On May 14, 2020, Mr. Shabazz filed his Complaint in this suit. (Id. at 1.) Mr. Shabazz states that he did not appeal the decision, as required by the Florida Administrative Code, because he received no response from prison officials which he could include in his appeal. (Id.) As the Florida Administrative Code makes clear, inmates must attach to their appeal both their grievances and prison officials' responses to those grievances in order to properly appeal an unsatisfactory

response to a grievance. See Fla. Admin. Code r. 33-103.007(2)(a). Without the prison officials' responses, Mr. Shabazz could not have properly filed an appeal to the Office of the Secretary because the documentation he submitted would have been devoid of the prison's positions on the grieved issues.

While this rationale behind Mr. Shabazz's decision not to appeal may have been persuasive if indeed the Warden's Office did not respond, Mr. Shabazz's Complaint was filed before the Warden's Office had a chance to respond. Again, the timeframe in which prison officials must investigate, evaluate, and respond to the inmate's formal grievance is twenty calendar days. See Fla. Admin. Code r. 33-103.011(3)(b). Twenty days after April 27, 2020 was May 18, 2020, but Mr. Shabazz filed his Complaint stating that the Warden's Office had not responded on May 14, 2020, three days before the timeframe for the Warden's Office to appropriately respond had closed. Furthermore, Mr. Shabazz does not state that he pursued any administrative remedy with regard to the second incident alleged in his Complaint, which occurred on May 13, 2020. Instead, he filed his Complaint detailing the events that transpired during this second incident just one day after it occurred and without any sort of review from the Warden's Office or other prison officials. (Doc. 1 at 5.) For both of these reasons, Mr. Shabazz's Complaint was filed prematurely and did not give the prison officials the full extent of time in which to respond.

Because the affirmative defense of failure to exhaust administrative remedies appears on the face of Mr. Shabazz's complaint, Mr. Shabazz's complaint is due to be dismissed in its entirety for failure to state a claim. Jones v. Bock, 549 U.S. 199,

215 (2007); see also, e.g., Okpala v. Drew, 248 Fed.Appx. 72, 73 (11th Cir. 2007) ("[T]he district court did not err by dismissing the complaint, pursuant to § 1915A, because [the prisoner's] failure to exhaust administrative remedies—an affirmative defense—was clear from the face of the complaint." (citation omitted). "Ordinarily, a party must be given at least one opportunity to amend before the district court dismisses the complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005). However, "[a] district court need not . . . allow an amendment . . . where amendment would be futile." Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001). As Mr. Shabazz's failure to exhaust his administrative remedies before filing this suit is a deficiency that cannot be cured by amendment, this case should be dismissed. Ross v. Blake, No. 15-339, 2016 WL 3128839, at *5 (U.S. June 6, 2016) ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.").

## CONCLUSION

Because Mr. Shabazz has failed to exhaust his administrative remedies, Defendants' Motion to Dismiss (Doc. 20) is **GRANTED**, and Mr. Shabazz's Complaint (Doc. 1) is **DISMISSED without prejudice** and without leave to amend. Because Plaintiff failed to exhaust his administrative remedies as required under the PLRA, granting him an opportunity to amend indeed is futile. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted.").

11

The Clerk is **DIRECTED** to terminate all pending deadlines, deny any pending motions as moot, and close the file. Should Mr. Shabazz choose to add additional claims related to the underlying facts in his existing case before Judge Steele, he should consider requesting leave to amend his complaint in case number 2:17-cv-648-JES-NPM or file a new lawsuit, requesting it be consolidated with that existing case.

**ORDERED** at Fort Myers, Florida on July 22, 2022.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE